73349. SEARS v. THE STATE.
(356 SE2d 72)

POPE, Judge.

Dave William Sears brings this appeal from his convictions of incest, enticing a child for indecent purposes, child molestation (two counts), and rape. *Held*:

1. Appellant's first enumeration of error challenges his convictions of Count 1 (incest), Count 2 (enticing a child for indecent purposes), and Count 3 (child molestation) on the ground that the statute of limitation had run prior to his indictment. Appellant was indicted on April 18, 1985. As to Counts 1, 2 and 3 the indictment alleged that these criminal acts occurred "in the year 1980" but were unknown to the prosecutor and authorities of the State prior to March 1985.

The prosecution for felonies such as those in Counts 1, 2 and 3 must be commenced within four years after the commission of the crimes. OCGA § 17-3-1 (c); see *Peavy v. State*, 179 Ga. App. 397 (1) (346 SE2d 584) (1986). "The period within which a prosecution must be commenced under Code Section 17-3-1 . . . does not include any period in which: . . . (2) The person committing the crime is unknown or the crime is unknown. . . ." OCGA § 17-3-2. Thus, "[t]he key to determining when the statute of limitation begins to run is to find when the offender or offense became known. [Cits.]" *State v. Brannon*, 154 Ga. App. 285, 286-87 (267 SE2d 888) (1980). The State bears the burden of proof in this regard. See *State v. Lester*, 170 Ga.

App. 471 (317 SE2d 295) (1984); *State v. Tuzman*, 145 Ga. App. 481 (3) (243 SE2d 675) (1978).

The victim testified that at the time of the alleged criminal acts in 1980, she was eleven years old. She knew the alleged acts were wrong ("I have been raised and taught . . . to believe that men shouldn't . . . do things like that to little girls"), but she was not specifically aware that such conduct was criminal. She became aware of the criminality of the alleged conduct in the summer of 1984, approximately one year before trial, as the result of radio and television news broadcasts. She stated that she did not report appellant initially because she was ashamed. She also testified that she feared appellant because of a variety of threats he had made toward her if she were to report the alleged conduct. "[T]his court in *Brown v. State*, 6 Ga. App. 329 (2) (64 SE 1001) [(1909)], . . . held that 'The statute of [limitation] does not begin to run in favor of the offender until his offense is known to the prosecutor, or to someone *interested* in the prosecution, or *injured* by the offense.' The only possible construction of this decision is that when the offense *is* known to the person injured by the offense, the statute *does* begin to run. . . . This is as it should be, because the injured person has some motive for reporting the crime to the State. Another thing shown by the decision in the *Brown* case is that the prosecutor is not the only one whose knowledge would bind the State. It holds that the statute does not begin to run until the offense is known to the 'prosecutor' *or* to someone 'injured by the offense'; which necessarily means that it does begin to run after it is known to the prosecutor *or* to the one 'injured by the offense.' It seems to be well settled that if a crime against the public involves also a wrong upon an individual, such as an assault or any other crime in which an individual, who is not a party to the crime suffers, the knowledge of the victim is the knowledge of the State, even though the victim does not represent the State in an official capacity." *Taylor v. State*, 44 Ga. App. 64, 69-70 (160 SE 667) (1931); *State v. Brannon*, supra. Compare *Kiles v. State*, 48 Ga. App. 675 (2) (173 SE 174) (1934), wherein knowledge of the offense of fornication and adultery by the joint offender was not imputable to the State. Where, as here, the undisputed record evidence shows that the victim had knowledge of the offenses (if not their criminality) allegedly committed upon her by appellant "in the year 1980," such knowledge is imputed to the State, and precludes the State from obtaining an indictment against appellant for those alleged crimes more than four years after both the offenses and the offender were known. See generally *Holloman v. State*, 133 Ga. App. 275 (211 SE2d 312) (1974).

We are compelled to reject the State's various assertions that the statute of limitation was tolled because the crimes were unknown in this case due to the victim's infancy, her lack of awareness of the

criminality of appellant's alleged conduct, and/or her purported fear of appellant. "In deciding when the statute of [limitation] begins to run in a given case several considerations guide our decision. The purpose of a statute of [limitation] is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. . . . For these reasons and others, we [reiterate] 'the principle that criminal limitations statutes are "to be liberally interpreted in favor of repose," [cit.]' [Cit.] . . . [Also,] '(s)tatutes of [limitation] normally begin to run when the crime is complete.' [Cits.]" *Toussie v. United States*, 397 U. S. 112, 114-15 (90 SC 858, 25 LE2d 156) (1970). "As a general rule, exceptions will not be implied to statutes of [limitation] for criminal offenses, and ordinarily the running of such a statute is not interrupted unless it contains an exception or condition that will toll its operation." 22 CJS 596, Criminal Law, § 228 (1). See also *State v. Locke*, 73 W.Va. 713, 716 (81 SE 401) (1914), holding that "where there is cause for a criminal prosecution, the statute begins to run unless prevented by some exception to the statute, and after it has commenced to run it cannot be interrupted by the happening of any subsequent event or disability, as death, coverture, infancy, etc." "Any exception to the limitation period must be construed narrowly and in a light most favorable to the accused." *State v. Holmes*, 181 Ind. App. 634, 637 (393 NE2d 242) (1979). " 'Every statute of [limitation], of course, may permit a rogue to escape,' " *Toussie v. United States*, supra at 123-24, but there being no statutory basis for the exceptions to the statute espoused here by the State, we must give effect to the clear expression of legislative will that felony prosecutions *must* be commenced within four years after the commission of the crimes and reverse appellant's convictions of Counts 1, 2, and 3 of the indictment.

2. In light of our holding in Division 1, supra, appellant's second and third enumerations of error are moot.

3. Reviewing the evidence in the light most favorable to the verdict, we conclude that any rational trier of fact could have found appellant guilty beyond a reasonable doubt of the remaining count of child molestation (see *White v. State*, 180 Ga. App. 185 (1) (348 SE2d 728) (1986); *Childs v. State*, 177 Ga. App. 257 (2) (339 SE2d 311) (1985)) and of rape (see *J. B. v. State*, 171 Ga. App. 373 (1) (319 SE2d 465) (1984)). Appellant's fourth and fifth enumerations are thus without merit.

4. Appellant's sixth enumeration of error challenges the trial

court's use of the word "intimidation" in charging the jury relating to the alleged rape that "consent induced by force or fear or intimidation does not amount to consent in law, and does not prevent the intercourse from being rape." This charge is taken from the Council of Superior Court Judges Suggested Pattern Jury Instructions, Vol. 2, Criminal Law, and we find no error in this regard. See *Core v. State*, 238 Ga. 448 (3) (233 SE2d 200) (1977); *Pierce v. State*, 230 Ga. 766 (1) (199 SE2d 235) (1973).

5. The victim's testimony relating an earlier, unindicted act of molestation upon her by appellant was properly admitted in evidence. *Cox v. State*, 173 Ga. App. 422 (1) (326 SE2d 796) (1985); *Anderson v. State*, 172 Ga. App. 202 (322 SE2d 532) (1984). Also, the testimony of two other witnesses relating inappropriate or questionable behavior by appellant toward them as young girls was admissible. Although this testimony did not allege criminal activity, it was relevant as tending to show appellant's lustful disposition. See *Beldonza v. State*, 160 Ga. App. 647 (1) (288 SE2d 37) (1981); *Bearden v. State*, 159 Ga. App. 892 (4) (285 SE2d 606) (1981). See generally *Kraus v. State*, 169 Ga. App. 54 (1) (311 SE2d 493) (1983). There is no merit in appellant's seventh enumeration of error.

6. Appellant's eighth enumeration is controlled adversely to him by *White v. State*, 253 Ga. 106 (3) (317 SE2d 196) (1984).

7. We have reviewed the record in light of appellant's ninth enumeration of error alleging hostility and bias by the trial court toward defense counsel and find no basis for reversal. See generally OCGA § 17-8-57; *Head v. State*, 160 Ga. App. 4 (5) (285 SE2d 735) (1981).

8. We find no abuse of the trial court's discretion in clearing the courtroom of the audience during the victim's testimony in this case. OCGA § 17-8-53; see *Moore v. State*, 151 Ga. 648 (1) (108 SE 47) (1921), cert. dismissed, 260 U. S. 702 (1922); *Parker v. State*, 162 Ga. App. 271 (6) (290 SE2d 518) (1982). There is no merit in this tenth enumeration of error.

9. Appellant's eleventh enumeration assigns error to the trial court's denial of his request for an order to take the pretrial deposition of the victim after the victim had refused to talk with defense counsel prior to trial. Although appellant and his counsel had a right to interview the victim prior to trial, this right was subject to the victim's acquiescence in such interrogation. *Foster v. State*, 170 Ga. App. 222 (2) (316 SE2d 828) (1984). "No broad right of discovery exists . . . in criminal cases; the common law recognized no right of discovery in such cases, and it has been held that unless introduced by appropriate legislation, the doctrine of discovery is a complete and utter stranger to criminal procedure." 23 CJS 787, Criminal Law, § 955 (1). See, e.g., *Garner v. State*, 159 Ga. App. 244 (1) (282 SE2d 909) (1981). Georgia law provides for the taking of depositions in criminal cases

only where it appears to the satisfaction of the trial court "that the witness is in imminent danger of death or . . . has been threatened with death or great bodily harm because of the witness's status as a potential witness in any criminal trial or proceeding." OCGA § 24-10-130. There being no factual predicate for the application of OCGA § 24-10-130 in the case at bar, nor any other statutory basis asserted by appellant, we adhere to the common law rule that a defendant in a criminal action does not have a right to take the deposition of a potential prosecution witness for discovery purposes. Accord, e.g., *Craig v. State*, 2 Tenn. Crim. 510 (455 SW2d 190) (1970); *Everett v. Gordon*, 266 Cal. App. 2d 667 (72 Cal. Rptr. 379) (1968); *Kardy v. Shook*, 237 Md. 524 (207 A2d 83) (1965); *State v. Lampp*, 155 S2d 10 (Fla. App. 1963), cert. dismissed, 166 S2d 891 (Fla. 1964).

10. Appellant's twelfth enumeration of error is controlled adversely to him by *Barnes v. State*, 157 Ga. App. 582 (2) (277 SE2d 916) (1981).

11. "Lastly, there is no merit to appellant's cumulative error argument. This state does not follow a 'cumulative error' rule of prejudice. Any error of record . . . must stand or fall upon its own merits and is not aided or aggravated by the accumulative effect of other claims of error. [Cit.]" *Butler v. State*, 163 Ga. App. 475, 476 (294 SE2d 700) (1982).

*Judgment affirmed in part; reversed in part. Birdsong, C. J., Banke, P. J., Carley, Sognier, Benham and Beasley, JJ., concur. Deen, P. J., and McMurray, P. J., dissent.*

McMURRAY, Presiding Judge, dissenting in part.

As I cannot agree to the majority's holding in Division 1 of the majority opinion, I must respectfully dissent as to that Division and reversal in part.

Relying upon *Toussie v. United States*, 397 U. S. 112, 114-115 (90 SC 858, 25 LE2d 156), the majority rejects the State's contention that the statute of limitation should be tolled. The majority maintains that statutes of limitation should be applied strictly to protect defendants from having to defend themselves against stale charges. In my opinion, this principle has no application in this case for two reasons. First, "It fails to take into account the special circumstances of child molestation cases. [An 11] year-old victim does *not* 'necessarily know' that the acts of a trusted [stepfather] constitute a crime. As in most indecent liberties cases, the victim was quite young, naive and trusting. Though horrified by her [stepfather's] actions and threats she did not realize until much later the offenses committed against her constituted a crime punishable by law." *State v. Bentley*, 721 P2d 227, 231 (Kan. 1986) (dissenting opinion). Second, it fails to come to grips with the fact that the defendant himself frustrated the discov-

ery of the offense by intimidating the victim. The argument in favor of the strict application of the statute of limitation should not be applied where parental authority is used to frustrate the reporting of the offense. *State v. Danielski,* 348 NW2d 352 (Minn. App. 1984). Compare *State v. French,* 392 NW2d 596 (Minn. App. 1986).

I would affirm the judgment of the trial court.

DECIDED MARCH 17, 1987 —
REHEARINGS DENIED APRIL 2, 1987 — 

*David C. Jones, Jr.,* for appellant.

*Timothy G. Madison, District Attorney, T. David Motes, John G. Wilbanks, Jr., Assistant District Attorneys,* for appellee.